UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| G&G CLOSED CIRCUIT EVENTS, LLC,<br><br>              Plaintiff,<br>     v.<br><br>SINGLE, LLC, et al.,<br><br>              Defendants. | CASE NO. C18-1295JLR<br><br>ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT |

## I.   INTRODUCTION

Before the court is Plaintiff G&G Closed Circuit Events, LLC's ("G&G") motion for partial summary judgment. (*See* Mot. (Dkt. # 20); *see also* Reply (Dkt. # 25).) Defendants Single, LLC, Joel Cendejas, and Jesus Cendejas (together, "Defendants") oppose the motion. (*See* Resp. (Dkt. # 21).) The court has considered the motion, the parties' submissions in support of and in opposition to the motion, the relevant portions

//

of the record, and the applicable law. Being fully advised, the court GRANTS in part and DENIES in part G&G's motion.[1]

## II.  BACKGROUND

This is a commercial piracy case arising out of the allegedly unlawful broadcast of *Gennady Golovkin v. Saul Alvarez IBF World Middleweight Championship Fight Program* (hereinafter, the "Program").[2] (*See* Compl. (Dkt. # 1) ¶¶ 16-21, 23-31.) The Program was telecast nationwide on Saturday, September 16, 2017. (*Id.* ¶ 23; Gagliardi Decl. (Dkt. # 20-2) ¶ 4.) G&G purchased and retains the exclusive commercial exhibition licensing rights to the Program. (Gagliardi Decl. ¶ 4.)

It is undisputed that Arturo's Mexican Restaurant—a restaurant in Des Moines, Washington, owned by Single, LLC—broadcast portions of the Program without authorization on September 16, 2017. (*See* Kemppainen Aff. (Dkt. # 20-4) at 1; Resp. at 2 (conceding that Arturo's Mexican Restaurant broadcast the Program).) G&G's investigator states that he entered Arturo's Mexican Restaurant on September 16, 2017, and was not charged a cover on entry. (*See* Kemppainen Aff. at 1.) He purchased one drink at the restaurant. (*Id.*) The investigator saw six TVs in the restaurant, one of which was showing one of the undercard bouts from the Program. (*Id.*) He counted between 10

//

---

[1] Neither party requests oral argument (*see* Mot. at 1; Resp. at 1), and the court does not consider oral argument to be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[2] The Program includes the undercard bouts and commentary encompassed in the television broadcast of the event. (*See* Compl. ¶ 23.)

and 15 patrons at the restaurant, and left the restaurant after only seven minutes.  (*Id.* at 2.)

Joel and Jesus Cendejas own and manage Single, LLC.  (*See* Joel Cendejas Decl. (Dkt. # 22) ¶ 3; Jesus Cendejas Decl. (Dkt. # 23) ¶ 3.)  Arturo Cendejas—Joel and Jesus's brother—founded Arturo's Mexican Restaurant but returned to Mexico and transferred the restaurant to Single, LLC, in 2016.  (*See* Joel Cendejas Decl. ¶¶ 2-3; Jesus Cendejas Decl. ¶¶ 2-3.)  After returning to Mexico, Arturo Cendejas continued to manage some of the accounts for Arturo's Mexican Restaurant, including the restaurant's DirecTV account.  (*See* Joel Cendejas Decl. ¶¶ 4-5; Jesus Cendejas Decl. ¶¶ 4-5.)  Defendants acknowledge that the DirecTV account that the restaurant used was in the name of an individual, Adrian Martinez, instead of a business or Single, LLC's name.  (*See* Orr Decl. (Dkt. # 20-3), ¶ 2, Ex. 2 at 4, 13, 22; Resp. at 2 (stating that Arturo Cendejas had "cut a corner in respect to [the DirecTV account], which, it turns out, is in the name of his friend Adrian Martinez").)  Joel and Jesus Cendejas state that they did not know that the account was in the name of an individual; in fact, both claim that they "didn't know anything about [the DirecTV] account."  (*See* Joel Cendejas Decl. ¶ 5; Jesus Cendejas Decl. ¶ 5.)

According to Jesus Cendejas, it was Arturo's idea to purchase the Program.[3]  (*See* Jesus Cendejas Decl. ¶ 9.)  Specifically, Jesus remembers that Arturo spoke to him

---

[3] Defendants' response states, without citation, that "Arturo ordered the [P]rogram." (Resp. at 2.)  However, the evidence before the court does not clearly indicate who ordered the Program.  Jesus and Joel Cendejas indicate that Arturo Cendejas managed the restaurant's DirecTV account (*see* Joel Cendejas Decl. ¶¶ 4-5; Jesus Cendejas Decl. ¶¶ 4-5), and Jesus recalls that it was Arturo's idea to buy the Program (Jesus Cendejas Decl. ¶ 9), but Jesus does not state

"about wanting to buy a pay-per-view for a boxing match." (*Id.*) Joel Cendejas, on the other hand, did not know that the restaurant would be showing a boxing match on TV. (*See* Joel Cendejas Decl. ¶ 8.) Neither Joel nor Jesus recalls seeing the Program on TV at the restaurant or seeing anyone looking at the TV screen that was showing the Program. (*See id.* ¶¶ 8, 11; Jesus Cendejas Decl. ¶ 8, 11.) They both state that Arturo's Mexican Restaurant did not advertise that it would be showing the Program or take in any unusual amount of money on the day of the Program. (*See* Joel Cendejas Decl. ¶¶ 10, 12; Jesus Cendejas Decl. ¶¶ 10, 12.) Finally, both Joel and Jesus claim that they "didn't get any money out of" showing the Program. (*See* Joel Cendejas Decl. ¶ 12; Jesus Cendejas Decl. ¶ 12.)

G&G brings three claims against Defendants based on the broadcast of the Program: (1) unauthorized publication or use of communications in violation of 47 U.S.C. § 605; (2) unauthorized reception of cable service in violation of 47 U.S.C. § 553; and (3) trespass of chattel. (Compl. ¶¶ 22-39.)

### III.   ANALYSIS

G&G moves for partial summary judgment on two issues: (1) liability against all Defendants on G&G's claim for unauthorized use of communications in violation of 47 U.S.C. § 605; and (2) liability and damages on G&G's claim for trespass to chattels. (*See* Mot. at 1-2.) The court address each issue in turn.

//

---

that Arturo ordered the Program (*see generally id.*). Thus, the only evidence regarding who ordered the Program comes from the unverified statement in Defendants' response brief.

**A.     Legal Standard**

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden to show there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party will bear the ultimate burden of persuasion at trial, it must establish a *prima facie* showing in support of its position on that issue. *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. *Id*. at 1473. If the moving party meets his or her burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial" to withstand summary judgment.[4] *Galen*, 477 F.3d at 658.

//

//

---

[4] The same standard and procedural rules apply to motions for partial summary judgment. *See* Fed. R. Civ. P. 56(a); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 768 (9th Cir. 1981) (noting that, on a motion for partial summary judgment "the moving party has the burden of showing that there is no genuine issue as to any material fact and that he is entitled to a partial summary judgment as a matter of law").

**B.     Unauthorized Use of Communications**

Defendants concede that Single, LLC, is liable on G&G's claim for unauthorized use of communications under 47 U.S.C. § 605(a).  (*See* Resp. at 2 (conceding liability for Single, LLC, under 47 U.S.C. § 605(a).)  However, Defendants oppose partial summary judgment as to Joel and Jesus Cendejas' liability under 47 U.S.C. § 605.  (*See* Resp. at 2.)  Accordingly, pursuant to Defendants' concession, the court GRANTS G&G's motion as it relates to Single, LLC's liability under 47 U.S.C. § 605(a), and addresses Joel and Jesus's individual liability.

The Communications Act of 1934, 47 U.S.C. § 605, "prohibits the unauthorized receipt and use of radio communications for one's 'own benefit or for the benefit of another not entitled thereto.'"  *DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) (quoting 47 U.S.C. § 605(a)).  "[L]iability under [S]ection 605 requires proof that a defendant has "(1) intercepted or aided the interception of, and (2) divulged or published, or aided the divulging or publishing of, a communication transmitted by the plaintiff."  *Cal. Satellite Sys. v. Seimon*, 767 F.2d 1364, 1366 (9th Cir. 1985) (*quoting Nat'l Subscription Television v. S & H TV*, 644 F.2d 820, 826 (9th Cir. 1981)).  A party aggrieved under Section 605 may, at its discretion, recover either actual or statutory damages.  47 U.S.C. § 605(e)(3)(C).

Although the Ninth Circuit does not appear to have weighed in on the issue, "[m]ost, if not all, courts addressing the issue of individual liability under . . . Section 605 have applied a standard of individual liability premised on copyright law." *Joe Hand Promotions, Inc. v. Bragg*, No. 13-CV-02725-BAS JLB, 2014 WL 2589242, at *5 (S.D.

Cal. June 10, 2014) (collecting cases). Under this standard, a plaintiff must show "(1) the individual had a right and ability to supervise the infringing activities and (2) had an obvious and direct financial interest in those activities." *J & J Sports Prods., Inc. v. Walia*, No. 10-5136 SC, 2011 WL 902245, at *3 (N.D. Cal. Mar. 14, 2011). In order to satisfy the first prong, a plaintiff "must allege more than the shareholder's right and ability to supervise generally." *Id.* The plaintiff "must allege that the defendant had supervisory power over the infringing conduct itself." *Id.* Furthermore, to satisfy the second prong, "a plaintiff cannot merely allege that the shareholders profit in some way from the profits of the corporation." *Id.* In other words, "an individual's status as a shareholder or officer is insufficient to show that he or she had the requisite supervision authority or financial interest to warrant individual liability." *Id.* "[I]n order to hold a shareholder of an [limited liability company ("LLC")] liable for the LLC's infringing conduct, a plaintiff must allege facts that show the shareholder was 'a moving active conscious force' behind the infringing act itself and that the shareholder derived direct financial benefit from the infringing conduct above and beyond a generic linkage between the profits of the shareholder and those of the LLC." *Id.*

The court concludes that there are genuine disputes of material fact that preclude summary judgment on Joel and Jesus Cendejas' individual liability. The undisputed evidence currently in the record shows that Joel and Jesus Cendejas are members of Single, LLC (*see* Answer (Dkt. # 12) ¶ 12), and managers of Arturo's Mexican Restaurant (Orr Decl. ¶ 4, Ex. 1 at 2, 7). Both Joel and Jesus admit that they were present at the restaurant and supervising employees on the night that the restaurant broadcast the

Program.  (*See id.* at 4, 9.)  Jesus admits that he knew in advance that his brother, Arturo, wanted to purchase the Program for broadcast at the restaurant.  (*See* Jesus Cendejas Decl. ¶ 9.)

      Although the foregoing evidence favors finding Joel and Jesus Cendejas individually liable for violating Section 605, other evidence in the record establishes genuine disputes of material fact that must be resolved at trial.  The undisputed evidence in the record establishes that Arturo Cendejas manages the DirecTV subscription at Arturo's Mexican Restaurant and Joel and Jesus had essentially no knowledge or control over the account.  (*See* Joel Cendejas Decl. ¶¶ 4-5; Jesus Cendejas Decl. ¶¶ 4-5.)  Although Jesus recalls speaking to Arturo in advance about Arturo's desire to order the Program (Jesus Cendejas Decl. ¶ 9), Joel Cendejas had no advance notice that the Program would be broadcast (*see* Joel Cendejas Decl. ¶ 8), and G&G submits no evidence suggesting that Jose or Jesus had any knowledge that the DirecTV account at issue was a personal account that was not authorized to broadcast the Program at the restaurant.  Outside of the unverified allegation in Defendants' response brief that "Arturo ordered the program" in the name of his friend, Adrian Martinez (*see* Resp. at 2), and Jesus's recollection that Arturo "want[ed] to buy a pay-per-view for a boxing match," (Jesus Cendejas Decl. ¶ 9), there is also no evidence in the record regarding who Adrian Martinez is or who, specifically, ordered the Program.  This evidence is sufficient to create a genuine dispute of material fact regarding whether Joel and Jesus Cendejas "had supervisory power over the infringing conduct" and were "moving active conscious

//

force[s] behind the infringing act." *Walia*, 2011 WL 902245, at *3 (citations and internal quotations omitted).

Further, G&G's evidence that Jesus and Joel Cendejas "had an obvious and direct financial interest in [the infringing] activities" is conclusory. *See id.* G&G merely alleges that because Joel and Jesus Cendejas are members of Single, LLC—which owns Arturo's Mexican Restaurant—that they had a direct financial interest in showing the Program without authorization. (*See* Reply at 4-5.) In order to show the requisite financial interest, however, G&G must show that Joel and Jesus "derived direct financial benefit from the infringing conduct above and beyond a generic linkage between the profits of the shareholder and those of the LLC." *Walia*, 2011 WL 902245, at *3. Joel and Jesus Cendejas both specifically deny that they made any additional money off the Program (*see* Joel Cendejas Decl. ¶ 12; Jesus Cendejas Decl. ¶ 12), and G&G does not submit any evidence to rebut that showing. In fact, even the circumstantial evidence that Arturo's Mexican Restaurant and Single, LLC, profited off the Program is rather thin. The only evidence in the record on that topic suggests that there was no cover charge at the restaurant and there were only 10-15 people at the restaurant during the Program (*see* Kemppainen Aff. at 1-2), which Joel and Jesus state was not a significant number of customers for a Saturday night (*see* Joel Cendejas Decl. ¶ 12; Jesus Cendejas Decl. ¶ 12).

In sum, the court GRANTS in part and DENIES in part G&G's motion for partial summary judgment on Defendants' liability under 47 U.S.C. § 605(a). The court GRANTS G&G's motion as applied to Single, LLC, but DENIES the motion as applied

//

to the individual liability of Joel and Jesus Cendejas based on the genuine disputes of material fact identified above.

**C.     Trespass to Chattels**

In its initial brief, G&G states that it seeks summary judgment on liability and damages against all Defendants on its claim of trespass to chattels. (*See* Mot. at 10-11.) On reply, however, G&G concedes that "Joel Cendejas has established there are material facts in dispute about his liability for this tort." (*See* Reply at 6.) G&G continues to assert that Jesus Cendejas and Single, LLC, are liable for trespass to chattels. (*See id.* at 5-6.) Accordingly, the court DENIES G&G's motion as it pertains to damages and liability on G&G's trespass to chattels claim against Joel Cendejas and turns to the merits of the motion as applied to Jesus Cendejas and Single, LLC.

Trespass to chattels "is the intentional interference with a party's personal property without justification that deprives the owner of possession or use." *Sexton v. Brown*, 147 Wash. App. 1005, 2008 WL 4616705, at *5 (Wash. Ct. App. Oct. 20, 2008) (unpublished) (citing Restatement (Second) of Torts § 217 (1965)).[5] In order to sustain an action for trespass to chattel, however, there must be "some actual damage to the chattel." *See* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser & Keeton on Law of Torts 87 (5th ed. 1984); *see also* Restatement (Second) of Torts § 218, cmt. e (1965) ("[O]ne who intentionally intermeddles with another's chattel is subject to liability only if

---

[5] The court "may consider unpublished state decisions, even though such opinions have no precedential value." *Emp'rs Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003).

his intermeddling is harmful to the possessor's materially valuable interest in the physical condition, quality, or value of the chattel . . . ."); D. Dobbs, P. Hayden, & E. Bublick, The Law of Torts § 60 (2d ed. 2015) ("To establish liability for trespass to chattels, the possessor must show legally cognizable harm."). Generally, there are three types of cognizable harms for a trespass to chattels claim: "(1) actual dispossession, which implies that the plaintiff's access to the chattel is barred or substantially limited for something more than a few moments; (2) physical harm to the chattel; or (3) physical harm to the plaintiff or to someone or something in which the plaintiff had a legal interest." D. Dobbs, P. Hayden, & E. Bublick, The Law of Torts § 60 (2d ed. 2015) (citations omitted).

Here, G&G appears to allege that the "chattel" at issue is the "exclusive right to distribute a broadcast signal to commercial establishments." (*See* Mot. at 11.) There exists minimal, if any, published Washington case law on trespass to chattels claims pertaining to satellite signals or signal distribution rights. Other federal courts in this circuit have concluded, however, that the "'[e]xclusive right to distribute a broadcast signal to commercial establishments constitutes a "right to possession of property" for purposes of conversion' or its sister tort, trespass to chattel." *See J & J Sports Prods., Inc. v. Gonzalez*, No. 1:17-CV-00678-CL, 2017 WL 6945169, at *3 (D. Or. Sept. 19, 2017), *report and recommendation adopted*, No. 1:17-CV-00678-CL, 2018 WL 411341 (D. Or. Jan. 11, 2018) (quoting *J & J Sports Prods., Inc. v. Paolilli*, No. 1:11-cv-680 LJO GSA, 2011 WL 6211905, at *3 (E.D. Cal. Dec. 14, 2011)). The court adopts that interpretation here and further concludes that G&G has established that Single, LLC,

interfered with G&G's exclusive distribution rights in a manner that caused actual damage to the value of those rights by broadcasting the Program without authorization. (*See* Gagliardi Decl. ¶¶ 9 (stating that the sublicense fee for Arturo's Mexican Restaurant would have been $2,500.00), 13 (stating that signal piracy costs G&G "millions of dollars annually").) Thus, G&G is liable for trespass to chattels. However, for the reasons set forth above regarding the genuine disputes of fact that preclude the court from awarding summary judgment to G&G on its Section 605 claim against Jesus Cendejas, *see supra* § III.B, the court concludes that summary judgment is not warranted against Jesus Cendejas on G&G's trespass to chattels claim.

Although the court concludes that Single, LLC, is liable for trespass to chattels, the court also concludes that G&G's request for damages is premature. G&G's claim against Defendants under 47 U.S.C. § 605 targets the same underlying conduct that G&G's trespass to chattels claim targets—the unauthorized broadcast of the Program. (*Compare* Compl. ¶¶ 22-32 *with id.* ¶¶ 38-39.) As such, awarding G&G damages on its trespass to chattels claim without determining the measure of damages available under Section 605 risks introducing duplicative damages awards or double damages. *See G & G Closed Circuit Events, LLC v. Antonio Montoya*, No. C19-0665RSM, 2020 WL 3962113, at *5 (W.D. Wash. July 13, 2020) ("The Court finds that damages for trespass to chattel are duplicative of the above award [under Section 605] and declines to add to the $7,500 figure."); *Gonzalez*, 2017 WL 6945169, at *4 (rejecting attempt to recover damages for trespass to chattel and a violation of Section 605 because that would "award Plaintiff two separate damages awards for the same underlying conduct"). Accordingly,

the court concludes that G&G has established the fact that it has incurred damages, but the court declines to determine the amount of those damages at this time.

In sum, the court GRANTS in part and DENIES in part G&G's motion for partial summary judgment on its trespass to chattels claim.  Specifically, as to liability, the court DENIES G&G's motion as it applies to personal liability for Joel and Jesus Cendejas and GRANTS the motion insofar as it applies to liability for Single, LLC.  As to damages, the court GRANTS G&G summary judgment on the fact of damages but DENIES G&G's motion insofar as it seeks a damages award at this juncture of the case.

**D.     Joint Status Report**

The court notes that Defendants have submitted evidence suggesting that the parties have failed to promptly schedule and participate in a settlement conference in this case.  (*See* Resp. at 5; Jacobowitz Decl. (Dkt. # 24) ¶ 3.)  Defendants' protestations are unrelated to the legal issues presented by G&G's motion for summary judgment and, as such, are not properly before the court.  Nevertheless, the court is troubled by Defendants' representations.  The court initially ordered the parties to participate in a settlement conference by April 2, 2020 (*see* Sched. Order (Dkt. # 16) at 1) and extended that deadline to June 12, 2020, after the parties failed to adhere to the original deadline (*see* 5/11/20 Order (Dkt. # 19) at 5).  Defendants now allege that the parties have flouted the settlement conference deadline for a second time.  (*See* Jacobowitz Decl. ¶ 3.)  Accordingly, the court ORDERS the parties to submit a joint status report within 30 days of the filing date of this order that details the parties' compliance or lack of compliance with the deadlines in the court's scheduling orders.  (*See* Sched. Order; 5/11/20 Order.)

1 To the extent that the parties have fallen out of compliance with the court's deadlines, the
2 court expects the parties to promptly rectify that oversight. The court also warns the
3 parties that future violations of court orders may result in sanctions.

### IV. CONCLUSION

For the reasons set forth above, the court GRANTS in part and DENIES in part G&G's motion for partial summary judgment (Dkt. # 20). The court also ORDERS the parties to submit a joint status report within 30 days of the filing date of this order that details the parties' compliance or lack of compliance with the deadlines in the court's scheduling orders.

Dated this 30th day of September, 2020.

JAMES L. ROBART
United States District Judge